DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KELVIN CRAPPS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-980

[January 28, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Barbara McCarthy, Judge; L.T. Case No. 10-20609 CF10A.

Carey Haughwout, Public Defender, and James W. McIntire, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, for appellee.

DAMOORGIAN, C.J.

Kelvin Crapps appeals the trial court's order revoking his probation and the sentence imposed for the violation. We reverse because the evidence supported a violation of probation ("VOP") based only on the new crime of resisting an officer without violence. We remand this case to the trial court to determine whether revocation is appropriate based upon this single violation.

The following facts are relevant to this appeal. Appellant was sentenced to probation for burglary of a dwelling, possession of burglary tools, and criminal mischief. While on probation, Appellant was arrested and charged with several new crimes including: (1) home invasion robbery with a firearm, (2) aggravated battery with a deadly weapon, (3) criminal mischief resulting in property damage over $1,000, (4) resisting an officer without violence, and (5) resisting an officer by a disguised person. The state filed an affidavit of VOP alleging that Appellant violated the conditions of his probation by committing these new law violations and by associating with criminals. At the VOP

hearing, the state introduced testimony from the deputies who responded to the crime scene and the investigating detective. The victims did not testify.

One of the deputies saw three suspects fleeing when he arrived at the crime scene. He caught up to one of the suspects and took him into custody but could not confirm whether Appellant was one of the other two suspects that got away. When the K-9 deputy arrived at the scene, he went directly to the victims' residence. After confirming that a crime occurred, the K-9 deputy set out to locate the suspects. There was conflicting testimony as to whether there were three or four suspects but the K-9 deputy knew that at least one was still at large. The K-9 deputy deployed his dog to search for the missing suspect and found Appellant hiding under a vehicle "on the back side of where the crime took place." The K-9 deputy announced the dog, advised that Appellant was under arrest, and instructed Appellant to come out. Instead of complying with the K-9 deputy's order, Appellant retreated further underneath the vehicle. The K-9 deputy released the dog and took Appellant into custody. Appellant had a glove and a skully cap in his possession when the K-9 deputy found him.

Despite Appellant's presence near the crime scene, there was no other evidence that he was involved in the robbery. Appellant's fingerprints were not found on the gun used during the commission of the crimes nor were they found on any of the items stolen from the victims' residence. There was no DNA evidence linking Appellant to the items retrieved from the crime scene and no one identified Appellant as one of the perpetrators on the night of the crime.

The trial court found that Appellant willfully and substantially violated his probation based on all of the allegations, except resisting an officer by a disguised person.[1] The court revoked Appellant's probation and sentenced him to fifteen years in prison for his underlying offenses. This appeal follows.[2]

---

[1] The trial court found criminal mischief resulting in property damage under $1,000, not over $1,000.

[2] Appellant filed a Rule 3.800(b)(2) motion to correct sentencing error, arguing that he was entitled to retain his youthful offender status as to his underlying charges. The state conceded that Appellant was entitled to retain his youthful offender status and asked the court to resentence Appellant to fifteen years in state prison as a youthful offender. The court entered an order granting Appellant's motion to correct sentencing error and resentenced Appellant as a youthful offender nunc pro tunc. On appeal, Appellant

The trial court has broad discretion to revoke a defendant's probation. *Russell v. State*, 982 So. 2d 642, 646 (Fla. 2008). The court "'must consider each violation on a case-by-case basis for a determination of whether, under the facts and circumstances, a particular violation is willful and substantial and is supported by the greater weight of the evidence.'" *Id.* (quoting *State v. Carter*, 835 So. 2d 259, 261 (Fla. 2002)). Here, Appellant argues that the trial court abused its discretion in revoking his probation because the evidence was insufficient to implicate him in the robbery. We agree based on our factually analogous decision in *Glover v. State*, 17 So. 3d 886 (Fla. 4th DCA 2009).

In *Glover*, the state charged the defendant with violating his probation by committing burglary of a conveyance, grand theft, and resisting an officer without violence. *Id.* at 887. The evidence at the VOP hearing established that on the night of the burglary, the victim's neighbor saw a man on a bicycle circling outside the victim's home while two other men approached the victim's car. *Id.* Though the neighbor saw the dome light of the victim's car go on, he did not see the men remove anything from the vehicle. *Id.* The neighbor called the police but the men fled before they arrived. *Id.* A few minutes later, police received a call that several men were breaking into cars in the same area. *Id.* Police saw four men (one on a bicycle) crossing over a concrete wall. *Id.* The men fled despite police orders to stop. *Id.* Three of the suspects were taken into custody one block away—one of them had the defendant's phone in his possession. *Id.* Police set up a perimeter and called in the K-9 unit to locate the fourth suspect. *Id.* Police found the defendant on a nearby rooftop, where they also recovered "a calculator, a digital camera and case, a GPS, a garage door opener, a baggie of change, and a Blockbuster card belonging to [a man unconnected to the crime]." *Id.* at 887–88. The defendant testified that he purchased the items from one of the men the police saw him with and that he ran onto the roof because police were chasing him and released the dog. *Id.* at 888.

The trial court revoked the defendant's probation but we reversed because the evidence was insufficient to establish that the defendant "was either himself guilty of burglarizing [the victim's] car or was guilty under a 'principals' theory." *Id.* In so holding, we reasoned that even though "[i]t is tempting to speculate that the defendant was involved in burglarizing [the victim's] car," no witness placed the defendant at the crime scene and none of the items found in his possession belonged to the victim. *Id.* We also held that the trial court did not err in finding

maintains that he should have been sentenced as a youthful offender. However, this argument was rendered moot by the trial court's actions.

that the defendant committed the offense of resisting an officer without violence. *Id.* In so holding, we reasoned that the detention was lawful because the "close temporal and geographical factors present, time of day, similar group size, and the distinguishing feature that the small group of pedestrians included one man on a bicycle, justified the police's actions in attempting to briefly detain the individuals to conduct an investigatory stop." *Id.*

The limited facts implicating the defendant of the burglary in *Glover* are actually stronger than those implicating Appellant of the robbery in this case. In *Glover*, police confirmed that there were four suspects whereas, here, there was some discrepancy as to whether there were three or four. When the deputies took two other suspects into custody, they found nothing connecting them to Appellant whereas, in *Glover*, one of the suspects had the defendant's phone in his possession. Like *Glover*, no witness placed Appellant at the crime scene and nothing found on Appellant's person conclusively linked him to the robbery. While the fact that Appellant was found hiding under a vehicle in close proximity to the crime raises some questions about what he was doing there, these facts, standing alone, would require the same level of speculation that we found legally insufficient to establish a violation in *Glover*. Thus, the trial court erred in finding that Appellant violated his probation by committing the new crime of home invasion robbery with a firearm. Because the violations of probation based on aggravated battery, criminal mischief, and association with criminals were premised upon Appellant's involvement in the robbery, we conclude that the trial court erred in finding violations on these bases as well.

As to the remaining charge of resisting an officer without violence, we reach a different conclusion. "The elements of resisting an officer without violence require that (1) the officer be engaged in the lawful execution of a legal duty and (2) the defendant's action constitute obstruction or resistance of that lawful duty." *J.P. v. State*, 855 So. 2d 1262, 1265–66 (Fla. 4th DCA 2003) (citing *H.H. v. State,* 775 So. 2d 397, 398 (Fla. 4th DCA 2000)); *see also* § 843.02, Fla. Stat. (2012). An officer is engaged in the lawful execution of a legal duty in detaining a person if the officer has a reasonable suspicion that the person is involved in criminal activity. *G.T. v. State*, 120 So. 3d 141, 143 (Fla. 4th DCA 2013) (citing *Davis v. State,* 973 So. 2d 1277, 1279 (Fla. 2d DCA 2008)). This means that the officer "'must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *O.B. v. State,* 36 So. 3d 784, 786–87 (Fla. 3d DCA 2010)).

Like the police in *Glover*, we hold that the K-9 deputy was engaged in the lawful execution of a legal duty when he placed Appellant under arrest. The K-9 deputy knew that police were still searching for one of the robbery suspects and he deployed his K-9 to assist in their search. When the K-9 deputy found Appellant hiding under the vehicle within the perimeter set up by the deputies, he had a reasonable suspicion that Appellant was involved in the robbery. Instead of heeding the K-9 deputy's commands, Appellant retreated further under the vehicle and did not come out until the K-9 deputy sent the dog in to retrieve him. Because Appellant was found hiding close in time and proximity to the scene of the crime, there was sufficient evidence to support the VOP based on the new crime of resisting an officer without violence. *See Glover*, 17 So. 3d at 888.

A trial court may revoke a defendant's probation based on a single VOP. *McDoughall v. State*, 133 So. 3d 1097, 1100 (Fla. 4th DCA 2014) (quoting *Whitehead v. State*, 22 So. 3d 846, 847–48 (Fla. 4th DCA 2009)). However, we will affirm a revocation of probation based on both proper and improper grounds only when it is clear from the record that the trial court would have revoked the defendant's probation absent the improper grounds. *Id.* (quoting *Lee v. State*, 67 So. 3d 1199, 1201–02 (Fla. 2d DCA 2011)). When we cannot determine whether the trial court would have revoked the defendant's probation based solely on the proper grounds, we must reverse and remand the matter to the trial court for reconsideration. *Id.*; *see also Glover*, 17 So. 3d at 889 (remanding case to the trial court because the record was not clear whether revocation was appropriate based on the single violation for resisting an officer without violence).

In this case, the trial court announced that it was revoking Appellant's probation based on all of the allegations, except resisting an officer by a disguised person, but it did not indicate whether any one of the violations justified the revocation in and of itself. Thus, it is unclear whether the trial court would have revoked Appellant's probation based solely on the new law violation of resisting an officer without violence. Accordingly, we reverse and remand this case to the trial court to determine whether revocation of probation is appropriate based on the crime of resisting an officer without violence. *See Glover*, 17 So. 3d at 889. If the trial court determines that revocation is appropriate, the trial court shall resentence Appellant.

*Affirmed in part, Reversed in part, and Remanded*

TAYLOR and CONNER, JJ., concur.

\*     \*     \*

*Not final until disposition of timely filed motion for rehearing.*